*United States v. Bulloch*

# United States Court of Appeals

# For the Second Circuit

August Term 2025

Argued:  September 22, 2025
Decided:  January 27, 2026

No. 24-2975

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

KENT BULLOCH,

*Defendant-Appellant,*

WILLIAM YOUNG, SR., a/k/a Bill,

*Defendant.*

Appeal from the United States District Court
for the Eastern District of New York
No. 1:20CR00181,

Peggy Kuo, *Magistrate Judge*;
Eric R. Komitee, *District Judge*.

---

Before:     ROBINSON and MERRIAM, *Circuit Judges.*[*]

Defendant-appellant Kent Bulloch appeals from a judgment entered in the United States District Court for the Eastern District of New York convicting him, following a jury trial, of a misdemeanor offense of conspiracy to violate a provision of the Defense Production Act of 1950, 50 U.S.C §4512, stemming from his involvement in a scheme during the COVID-19 pandemic to buy personal protective equipment ("PPE") in bulk and resell it for a profit. *See United States v. Bulloch*, No. 1:20CR00181(EK)(PK), 2024 WL 4654134 (E.D.N.Y. Nov. 1, 2024).

On appeal, Bulloch argues that the term "accumulate" as used in Section 4512 is interchangeable with the term "hoard" and means "to gather, collect, or accrue *over a period of time*." Bulloch contends that the evidence at trial was insufficient to prove that he acquired PPE over a period of time or intended to withhold PPE from the market for a period of time, and that his conviction therefore cannot stand. We disagree with Bulloch on this narrow question of statutory interpretation. Accordingly, we **AFFIRM**.

> JEREMY GUTMAN, New York, NY, *for Defendant-Appellant*.

> ROBERT POLLACK, Assistant United States Attorney (Michael W. Gibaldi, Assistant United States Attorney, *on the brief*), *for* Joseph Nocella,

---

[*] Circuit Judge Alison J. Nathan was originally a member of the panel but was unable to participate in consideration of this matter. Pursuant to this Court's Internal Operating Procedures, the appeal was heard and decided by the remaining members of the panel, who are in agreement. *See* 2d Cir. IOP E(b).

2

Jr., United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee.*

SARAH A. L. MERRIAM, *Circuit Judge*:

Defendant-appellant Kent Bulloch appeals from a judgment entered in the United States District Court for the Eastern District of New York (Kuo, *M.J.*), convicting him, following a jury trial before the Magistrate Judge, of a misdemeanor offense of conspiracy to violate Section 4512 of the Defense Production Act of 1950 ("DPA"). The conviction stems from Bulloch's involvement in a scheme during the COVID-19 pandemic to buy, using money from investors, personal protective equipment ("PPE") in bulk and resell it at an inflated price. Bulloch was sentenced principally to a two-year term of probation and a fine of $1,000. Bulloch also appeals from an order of the District Judge (Komitee, *D.J.*), affirming the judgment entered by the Magistrate Judge. *See United States v. Bulloch*, No. 1:20CR00181(EK)(PK), 2024 WL 4654134 (E.D.N.Y. Nov. 1, 2024).

On appeal, Bulloch argues that the term "accumulate" as used in Section 4512 of the DPA is synonymous with the term "hoard," which, according to Bulloch, means "to gather, collect, or accrue *over a period of time*." Bulloch Br. at 6

3

(emphasis added). Bulloch requested a jury instruction to that effect, which was denied. In accordance with his proposed definition, Bulloch contends that the government had to prove beyond a reasonable doubt that he intended to withhold scarce materials from the market for a period of time. Bulloch avers that the evidence at trial was insufficient to prove his intent to withhold PPE – specifically, KN-95 masks – from the market *for a period of time*, and thus his conviction cannot stand. We disagree with Bulloch on this narrow question of statutory interpretation. Accordingly, we **AFFIRM**.

I.      **BACKGROUND**

A.      **Defense Production Act of 1950 and COVID-19 Regulation**

Congress passed the DPA, 50 U.S.C. §§4501 *et seq.*, during the Korean War in an effort "to maintain a large production of military goods while seeking also to meet the long-denied and increasing needs of the Nation's civil economy." *Allen v. Grand Cent. Aircraft Co.*, 347 U.S. 535, 549 (1954). To that end, the Act authorizes the President to "allocate materials, services, and facilities in such manner, upon such conditions, and to such extent as [he or she] shall deem necessary or appropriate to promote the national defense." 50 U.S.C. §4511(a)(2).

4

The President may exercise this authority "to control the general distribution of any material in the civilian market" only if:

> the President finds (1) that such material is a scarce and critical material essential to the national defense, and (2) that the requirements of the national defense for such material cannot otherwise be met without creating a significant dislocation of the normal distribution of such material in the civilian market to such a degree as to create appreciable hardship.

*Id.* §4511(b). With respect to materials that have been designated as scarce and critical to the national defense, Section 4512, titled "Hoarding of designated scarce materials," provides:

> In order to prevent hoarding, no person shall accumulate (1) in excess of the reasonable demands of business, personal, or home consumption, or (2) for the purpose of resale at prices in excess of prevailing market prices, materials which have been designated by the President as scarce materials or materials the supply of which would be threatened by such accumulation.

*Id.* §4512. A willful violation of that section is a misdemeanor punishable by up to one year in prison and a fine of up to $10,000. *See id.* §4513.

On March 13, 2020, as the COVID-19 pandemic began to affect the United States, the President issued Proclamation No. 9994, declaring "that the COVID-19 outbreak in the United States constitutes a national emergency." Proclamation No. 9994, 85 Fed. Reg. 15337. Then, as relevant to this appeal, the President issued two executive orders ("EOs") pursuant to his authority under, among

5

other things, the DPA.  First, on March 18, 2020, the President issued EO 13909, titled "Prioritizing and Allocating Health and Medical Resources to Respond to the Spread of COVID-19."  Exec. Order 13909, 85 Fed. Reg. 16227.  EO 13909 found: "To ensure that our healthcare system is able to surge capacity and capability to respond to the spread of COVID-19, it is critical that all health and medical resources needed to respond to the spread of COVID-19 are properly distributed to the Nation's healthcare system and others that need them most at this time."  *Id.*  Accordingly, the EO concluded "that health and medical resources needed to respond to the spread of COVID-19, including personal protective equipment and ventilators, meet the criteria specified in" §4511(b) of the DPA, *id.*, as "scarce and critical material[s] essential to the national defense," §4511(b)(1).  The President delegated authority to the Secretary of Health and Human Services ("HHS") "to determine, . . . the proper nationwide priorities and allocation of all health and medical resources, including controlling the distribution of such materials . . . in the civilian market, for responding to the spread of COVID-19 within the United States."  Exec. Order 13909, 85 Fed. Reg. 16227.

6

Then, on March 23, 2020, the President issued EO 13910, titled "Preventing Hoarding of Health and Medical Resources To Respond to the Spread of COVID-19." That Order stated: "To ensure that our Nation's healthcare systems are able to surge capacity and capability to respond to the spread of COVID-19, it is the policy of the United States that health and medical resources needed to respond to the spread of COVID-19, such as personal protective equipment and sanitizing and disinfecting products, are not hoarded." 85 Fed. Reg. 17001. The President further delegated authority to the Secretary of HHS "to prevent hoarding of health and medical resources necessary to respond to the spread of COVID-19 within the United States." *Id.*

Pursuant to these EOs, on March 25, 2020, the Secretary of HHS published a "Notice of Designation of Scarce Materials or Threatened Materials Subject to COVID-19 Hoarding Prevention Measures" which "designat[ed] health and medical resources necessary to respond to the spread of Coronavirus Disease 2019 (COVID-19) that are scarce or the supply of which would be threatened by excessive accumulation," and that were to be "subject to the hoarding prevention measures authorized under the Executive order and the [DPA]." 85 Fed. Reg. 17592-01. The notice designated several materials as "scarce" or "threatened,"

7

including, as relevant here, certain PPE such as "N-95 Filtering Facepiece Respirators," "Other Filtering Facepiece Respirators," "PPE face masks," and "PPE surgical masks." *Id.*

### B.    Offense Conduct[1]

In March and April 2020, recognizing the anticipated "real shortage of masks" and the "real profit to be made," Gov't App'x at 81 (Gov't Ex. 102T), Bulloch engaged in a scheme to solicit investors to buy large quantities of PPE masks and resell them at a markup. Bulloch personally solicited potential investors. He also handled the money; investors would send funds to be held in Bulloch's attorney trust account, which he would then use to purchase masks. When the masks were resold at a higher price, the proceeds would be held in Bulloch's trust account.

As alleged in the Information, "[o]n or about April 22, 2020, Bulloch and [William] Young," his co-conspirator, "participated in a telephone call with" an undercover FBI agent, who "indicated that he intended to re-sell the PPE he was seeking to purchase from Bulloch and Young and that he intended to increase the

---

[1] These facts are drawn from the evidence presented at trial; they are "taken in the light most favorable to the jury's verdict." *United States v. Capers*, 20 F.4th 105, 112 n.2 (2d Cir. 2021).

resale price of the PPE by 50 percent." App'x at 19 (capitalization altered).

Specifically, Bulloch and the undercover agent discussed a plan to purchase 1 million masks at a cost of $3.80 per mask; the undercover agent would then send the "total purchase price" to Bulloch to be held in Bulloch's attorney trust account. Gov't App'x at 67 (Gov't Ex. 4). Bulloch would then use the funds to purchase masks and ship the masks to the undercover agent, who in turn would sell the masks for $5.70 per mask – a 50% markup. The undercover agent proposed that he would keep 80% of the profit, Bulloch would get 10%, and Young would get 10%.

After that call, on April 22, 2020, Bulloch sent the undercover agent an escrow agreement and wiring information. The escrow agreement provided, among other things: "Client shall not charge more than 10% above costs to secondary buyer. For example if masks cost $5.50 client will not resale masks above $6.05." Gov't App'x at 69 (Gov't Ex. 13A). The agreement further provided that "[a]ll funds received into escrow shall be deposited with other escrow funds in a general trust account of Law Offices of Kent Bulloch unless otherwise instructed," and "[e]scrow agent shall be paid as a paymaster and process facilitator .1 of net profit." Gov't App'x at 70. The wiring information

9

provided that the trust account was held in the name of "Law Offices of Kent

Bulloch." Gov't App'x at 67.

## II.  PROCEDURAL HISTORY

Bulloch was arrested pursuant to a warrant and criminal complaint and

made his initial appearance on May 4, 2020.  He was charged by way of an

Information dated May 18, 2020, with a single count of conspiracy to violate

Sections 4512 and 4513 of the DPA by

> knowingly and willfully conspir[ing] to accumulate, for the purpose
> of resale at prices in excess of prevailing market prices, materials
> which have been designated by the President as scarce materials or
> materials the supply of which would be threatened by such
> accumulation, to wit: certain personal protective equipment ('PPE'),
> including KN95 Filtering Facepiece Respirators (the 'KN95 Masks')
> and 3-Ply surgical masks (the '3-Ply Masks').

App'x at 18.

Prior to trial, the parties submitted proposed jury instructions.  Bulloch

objected to the government's proposed jury instruction that defined the word

"accumulate," as used in Section 4512, as "to gather, collect, or accrue."  App'x

at 30.  He instead sought a jury instruction that defined "accumulate" as "to

gather, collect, or accrue *over a period of time*."  *Id.* (emphasis added).  Bulloch's

proposed instruction then stated: "To establish this element in a prosecution

under the statute that prohibits hoarding scarce materials, the government must

10

establish that the defendant's accumulation of materials caused them to be withheld from the market for a period of time long enough to cause or allow their price to rise."  *Id.*  The Magistrate Judge indicated at the pretrial conference that she would reject Bulloch's proposed instruction.

Bulloch then moved to dismiss the Information on the basis that Section 4512 of the DPA is unconstitutionally vague.  As relevant to this appeal, Bulloch argued that "the word 'accumulate' in the context of 50 U.S.C. §4512 unambiguously refers to conduct that entails hoarding."  Letter Motion to Dismiss the Information at 3, *United States v. Bulloch*, No. 1:20CR00181(PMK)(EK) (E.D.N.Y. July 15, 2022), Doc. #55.[2]  The Magistrate Judge denied Bulloch's motion, holding: "The plain language of 50 U.S.C. §4512 is unambiguous and contains no temporal element."  Opinion and Order at 8, *United States v. Bulloch*, No. 1:20CR00181(PMK)(EK) (E.D.N.Y. July 19, 2022), Doc. #64.

---

[2] Bulloch also argued that the language "prevailing market price" rendered the statute unconstitutionally vague.  Letter Motion to Dismiss the Information at 3-4, *United States v. Bulloch*, No. 1:20CR00181(PMK)(EK) (E.D.N.Y. July 15, 2022), Doc. #55.  Bulloch does not press this argument on appeal; he has therefore abandoned it.  *See United States v. Prawl*, 149 F.4th 176, 187 (2d Cir. 2025) ("An argument not raised on appeal is generally deemed abandoned." (citation modified)).

The matter proceeded to trial. At the close of evidence, the Magistrate Judge instructed the jury: "The first element is that the Defendant accumulated or conspired [to] accumulate certain materials specified in the information; namely, PPE, including KN95 masks and 3-ply masks. 'Accumulate' is used in the ordinary sense and simply means to gather, collect, or accrue." App'x at 23. The jury returned a verdict convicting Bulloch. The Magistrate Judge sentenced Bulloch principally to two years of probation and imposed a $1,000 fine.

Bulloch appealed to the District Judge pursuant to 18 U.S.C. §3402 and Federal Rule of Criminal Procedure 58(g)(2)(B), raising, among others, the same argument about the term "accumulate." The District Judge affirmed the conviction, concluding that Section 4512 is unambiguous and that the plain meaning of the term "accumulate" as used in the statute "contains no temporal limitation." *United States v. Bulloch*, No. 1:20CR00181(PMK)(EK), 2024 WL 4654134, at *4 (E.D.N.Y. Nov. 1, 2024). The District Judge further held that the statutory context supported interpreting "accumulate" in accordance with its plain meaning. *See id.* Finally, the District Judge concluded that, even assuming the text was ambiguous, the legislative history confirmed that the drafters did not intend for the statute to target only accumulation that occurs over some

indefinite but prolonged period of time.  *See id.* at *6.  In light of the statutory

analysis, the District Judge rejected Bulloch's vagueness challenge.  Bulloch

appealed.

## III.    DISCUSSION

This appeal presents a single, narrow issue: the meaning of the term

"accumulate" as used in Section 4512 of the DPA.  On appeal, as before the

District Court, Bulloch argues that the term "accumulate" as used in Section 4512

means "hoard," and "[i]f that is correct, Bulloch's conviction cannot stand,

because the evidence at trial did not establish that he conspired to hoard scarce

materials."  Bulloch Br. at 13.  In other words, according to Bulloch, "the only

'accumulation' [Section 4512] prohibits is accumulation that comprises hoarding.

. . .  If so defined, the statute would not apply to Bulloch because the trial

evidence established that he did not contemplate maintaining an inventory of

masks; rather, his intent was to secure a purchaser's payment in advance and to

distribute masks as soon as he acquired them."  *Id.* at 6.[3]  We disagree with

Bulloch's interpretation.

---

[3] Bulloch styles his argument as a challenge to the sufficiency of the evidence. But he argues only that the evidence was insufficient to sustain his conviction *if* this Court agrees with his interpretation of the term "accumulate" – he does not

13

**A. The statutory text is unambiguous.**

We review the interpretation of a federal statute *de novo*. *See United States v. Aleynikov*, 676 F.3d 71, 76 (2d Cir. 2012).

The principles of statutory interpretation are familiar. We begin with the statute's "plain meaning, if it has one." *United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000). "In looking at a statute's plain meaning, we also must consider the context in which the statutory terms are used, as we do not . . . construe statutory phrases in isolation; we read statutes as a whole." *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 418 (2d Cir. 2022) (citation modified); *United States v. Gayle*, 342 F.3d 89, 93 (2d Cir. 2003), *as amended* (Jan. 7, 2004) ("The text's plain meaning can best be understood by looking to the statutory scheme as a whole and placing the particular provision within the context of that statute." (citation modified)). "Due respect for the prerogatives of Congress in defining federal crimes prompts restraint in this area, where we typically find a narrow interpretation appropriate." *Aleynikov*, 676 F.3d at 76 (citation modified).

If the statutory language is unambiguous, the inquiry ends there. *See Gayle*, 342 F.3d at 92. But "[i]f we find the statutory provision ambiguous, . . . we

contend that the evidence was insufficient to convict him under the definition of accumulate adopted by the District Court.

14

then turn to canons of statutory construction for assistance in interpreting the statute." *United States v. Rowland*, 826 F.3d 100, 108 (2d Cir. 2016) (citation modified). Finally, "[w]e resort to legislative history only if, after consulting canons of statutory instruction, the meaning remains ambiguous." *Id.* (citation modified).

### 1.    Plain meaning

Section 4512 states:

> In order to prevent *hoarding*, no person shall *accumulate* (1) in excess of the reasonable demands of business, personal, or home consumption, or (2) for the purpose of resale at prices in excess of prevailing market prices, materials which have been designated by the President as scarce materials or materials the supply of which would be threatened by such accumulation.

50 U.S.C. §4512 (emphases added). Where Congress did not define certain terms – here, the word "accumulate," *see* 50 U.S.C. §4552 (definitions) – we "presumptively give those terms their ordinary meaning." *EPA v. Calumet Shreveport Refin., L.L.C.*, 145 S. Ct. 1735, 1747 (2025); *accord Dauray*, 215 F.3d at 260 (where "Congress provided no definition of the term[]," we "consider the ordinary, common-sense meaning of the word[]"); *see also Aleynikov*, 676 F.3d at 76 ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language

15

accurately expresses the legislative purpose." (citation modified)).

Dictionary definitions generally agree that the ordinary meaning of the term "accumulate" contains no temporal requirement. For example, Webster's Third New International Dictionary defines "accumulate" to mean "to heap up in a mass: pile up," "amass," and "collect, gather." *Accumulate*, Webster's Third New International Dictionary (unabridged ed. 2002); *accord Accumulate*, Oxford English Dictionary (2d ed. 1989) (defining "accumulate" to mean "[t]o heap up in a mass, to pile up" or "to amass or collect"). Webster's New International Dictionary, Second Edition, published just ten years after the DPA was enacted, similarly defined "accumulate" as "[t]o heap up in a mass; to pile up; hence, to collect or bring together; to amass." *Accumulate*, Webster's Second New International Dictionary (unabridged ed. 1960). And The American Heritage Dictionary of the English Language defines "accumulate" as "[t]o gather or cause to increase; amass." *Accumulate*, The American Heritage Dictionary of the English Language (5th ed. 2011). As these definitions illustrate, the plain meaning of the term "accumulate" – both now and as it was used close in time to when the statute was adopted – includes no requirement that accumulation occur only over a specific or lengthy period of time.

16

The dictionary definitions accord with ordinary usage. While a person may certainly "accumulate," "gather," or "collect" items over a period of time, one may also accumulate, gather, or collect items within a day, or even within minutes or seconds. For example, a person who drives to the supermarket and buys 100 rolls of toilet paper in one trip has "accumulated" 100 rolls of toilet paper, just as she would if she went to the supermarket once a day for 100 days, each time buying one roll of toilet paper until she had 100 rolls. Put simply, the plain meaning of the term "accumulate" does not mandate that the accumulation occur only over some unspecified, prolonged period of time, as Bulloch urges.[4]

Bulloch cites two dictionary definitions, neither of which undermines our conclusion. Bulloch relies on the Dictionary.com definition of "accumulate," which, like the others we have cited, contains no temporal requirement; it defines "accumulate" as "to gather or collect, often in gradual degrees; heap up." *Accumulate*, Dictionary.com.[5] That definition *permits* a temporal element, but

---

[4] We note that Bulloch does not provide any explanation of just how long, under his interpretation, one would need to withhold materials with the intent to resell them at above-market prices.

[5] *Accumulate*, Dictionary.com, https://www.dictionary.com/browse/accumulate (last visited Jan. 22, 2026). [https://perma.cc/25VC-6PP7]

certainly does not *require* it. Bulloch further contends that The Cambridge

Dictionary of American English defines accumulate to mean: "to

collect a large number of things over a long period of time." Bulloch Br. at 19.

That definition – an outlier – actually appears in the *general* Cambridge

Dictionary, and in fact, the website providing the definition indicates it is taken

from the "Cambridge Advanced Learner's Dictionary & Thesaurus." The

Cambridge Dictionary website indicates that the "American Dictionary" defines

the term as "to collect or increase something gradually, esp. [but not necessarily]

over a period of time." *Accumulate*, Cambridge Dictionary.[6] Bulloch's own

definitions confirm that the plain meaning of "accumulate" can – but need not –

include accumulation over a period of time. And the mere fact that one

dictionary defines accumulation as occurring "over a long period of time" does

not otherwise force an ambiguity in the term's plain meaning. *See MCI*

*Telecommunications Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 227 (1994) ("But what

petitioners demand that we accept as creating an ambiguity here is a rarity even

rarer than that: a meaning set forth in a single dictionary (and, as we say, its

---

[6] *Accumulate*, Cambridge Dictionary,
https://dictionary.cambridge.org/dictionary/english/accumulate (last visited Jan.
22, 2026) [https://perma.cc/49NP-GFL5].

progeny) which not only *supplements* the meaning contained in all other dictionaries, but *contradicts* one of the meanings contained in virtually all other dictionaries.").

### 2.    Context

While conceding that the "ordinary sense" of the term "accumulate" "simply means to gather, collect, or accrue," Bulloch contends that the broader statutory context "unmistakably" requires reading the term "accumulate" as occurring "over a period of time." Bulloch Br. at 19. We disagree. To the contrary, we conclude that the broader context of the statutory provision *confirms* that Congress intended the term "accumulate" as used in Section 4512 to be interpreted in accordance with its ordinary meaning, which lacks any temporal requirement. *See Springfield Hosp., Inc.*, 28 F.4th at 418.

Section 4512 contains a prefatory clause – "[i]n order to prevent hoarding" – that announces the statute's purpose. *See District of Columbia. v. Heller*, 554 U.S. 570, 577 (2008) (A "prefatory clause . . . announces a purpose."). The prefatory clause is followed by two alternative operative clauses, *i.e.*, two alternative means, separated by the disjunctive "or," by which the statutory purpose of preventing hoarding is achieved. First, "no person shall accumulate . . . in excess

19

of the reasonable demands of business, personal, or home consumption . . .

materials which have been designated by the President as scarce." 50 U.S.C.

§4512. Second, and independently, "no person shall accumulate . . . for the

purpose of resale at prices in excess of prevailing market prices[] materials which

have been designated by the President as scarce." *Id.* The latter operative clause,

at issue in this case, is devoid of any temporal limitation. There is no durational

requirement for a person's accumulation of scarce materials for the purpose of

reselling in excess of prevailing market rates. This provision criminalizes

accumulation with the intention of reselling scarce materials in excess of

prevailing market prices, without defining or restricting the period of time over

which a person must withhold those materials while intending to sell them for a

profit. And the absence of any temporal guideline makes sense; market prices

can change in an instant, and therefore one may need only accumulate scarce

materials for a short time when intending to resell them in excess of prevailing

market prices. To be sure, the accumulation of scarce materials over a long

period of time with an intent to resell them in excess of prevailing market prices

certainly falls within the scope of Section 4512, but it does not follow that the

statute criminalizes *only* such prolonged accumulation. *See Stanley v. City of*

20

*Sanford, Fla.*, 606 U.S. 46, 55-56 (2025) ("[E]ven supposing [petitioner's] conditional-mandate theory were a textually permissible way to understand the statute, we do not usually pick a conceivable-but-convoluted interpretation over the ordinary one.").

Bulloch counters that the provision's prefatory clause makes it "plain that 'accumulate' is used as a synonym, or a virtual synonym, for 'hoarding.'" Bulloch Br. at 16. For several reasons, we are not persuaded.

*First*, Bulloch's "preferred definition of [accumulate] would overlap with other verbs in the statute": namely, hoard. *Rowland*, 826 F.3d at 108. Accepting Bulloch's construction would require a conclusion that Congress meant "hoard" when it said "hoard," but also meant "hoard" when it said "accumulate" – a conclusion that runs headlong into the longstanding principle that we must "give effect, where possible, to every word of a statute." *Duncan v. Walker*, 533 U.S. 167, 167 (2001); *Pulsifer v. United States*, 601 U.S. 124, 149 (2024) ("In a given statute, the same term usually has the same meaning and different terms usually have different meanings."); *accord United States v. Kozeny*, 541 F.3d 166, 174 (2d Cir. 2008) ("When interpreting a statute, we are required to give effect, if possible, to every clause and word of a statute." (citation modified)).

21

*Second*, reading "accumulate" to mean "hoard" would impermissibly limit the scope of the operative clauses. While "a prefatory clause [may] resolve an ambiguity in the operative clause[,] . . . a prefatory clause does not *limit* or expand the scope of the operative clause." *Heller*, 554 U.S. at 577-78 (emphasis added). As explained, the operative clause at issue lacks any temporal limitation: It prohibits accumulation of scarce materials with an intention to resell them in excess of prevailing market prices, which could change instantaneously. If we accepted Bulloch's definition of "accumulate," we would narrow the scope of the operative clause to cover only accumulation that occurs over an unspecified but prolonged period of time. That cannot be squared with the statute's plain language or with principles of statutory interpretation.[7]

*Third*, even if we were to read "accumulate" as interchangeable with "hoard," the plain meaning of "hoard" itself does not necessarily require that the hoarding occur over some prolonged period of time. *See, e.g.*, *Hoard*, Oxford

---

[7] Bulloch protests that he does "not assert that section 4512's prefatory clause limits the *scope* of its operative clause, but that it contains a word ('hoarding') that informs the *meaning* of the word on which its operative clause hinges." Bulloch Br. at 21 (emphases in original). But his argument is that the prefatory language "hoard" requires reading a temporal requirement into "accumulate," where the word "accumulate" concededly would not otherwise contain such a requirement. That is precisely the kind of impermissible scope-expanding described in *Heller*.

English Dictionary (2d ed. 1989) ("To amass and put away (anything valuable) for preservation, security, or future use."); *Hoard* (verb), Webster's Third New International Dictionary (unabridged ed. 2002) ( "to collect or accumulate or amass into a hoard: lay up a hoard of"); *Hoard* (noun), Webster's Third New International Dictionary (unabridged ed. 2002) (defining a "hoard" as "a collection or accumulation or amassment of something . . . put aside for preservation or safekeeping or future use often in a greedy or miserly or otherwise unreasonable manner . . . "). Even assuming that the definition implies some temporal element – which we do not here hold – even that definition does not dictate a *specific* period of time over which hoarding must occur. Thus, even if we agreed with Bulloch that "accumulate" means "hoard," it does not necessarily follow that the statute criminalizes hoarding only for a prolonged period of time.

Beyond the prefatory clause, Bulloch's other efforts to draw support from the statutory context do not support an abandonment of the ordinary meaning of "accumulate." For example, Bulloch contends that Section 4512's "subsequent reference to 'materials the supply of which would be threatened by *such accumulation*'" requires reading "accumulate" to mean "hoard" because the

23

Secretary of HHS stated that "scarce materials" are those "likely to be[] in short supply or the supply of which would be threatened by *hoarding*." Bulloch Br. at 18-19 (emphasis in original). Bulloch posits that the Secretary's "substitution of 'hoarding' for 'such accumulation'" proves that "accumulation" is "interchangeable with 'hoarding.'" *Id.* at 19. Not so. The statutory text and the notice issued by the Secretary of HHS concern *both* "scarce materials" *and* "materials the supply of which would be threatened by such accumulation." *Compare* 50 U.S.C. §4512 (proscribing the accumulation of "materials which have been designated by the President as scarce materials *or* materials the supply of which would be threatened by such accumulation" (emphasis added)), *with* 85 Fed. Reg. 17592-01 (designating "[h]ealth or medical resources . . . which are, or are likely to be, in short supply (scarce materials) *or* the supply of which would be threatened by hoarding (threatened materials)" (emphasis added)). The Secretary's use of the word "hoarding" instead of "accumulation" with respect to threatened materials does not rewrite the *statute's* use of the term "accumulate."[8]

---

[8] As explained above, even if we agreed that the terms were interchangeable, it would not follow that the statute would then prohibit only accumulation or hoarding that occurred over a prolonged period of time.

24

And in any event, the statute independently regulates the accumulation of materials that are deemed scarce.[9]

Finally, Bulloch points to the DPA's "Declaration of Policy," 50 U.S.C. §4502, focusing on one of eight congressional findings: "[T]he security of the United States is dependent on the ability of the domestic industrial base to supply materials and services for the national defense and to prepare for and respond to military conflicts, natural or man-caused disasters, or acts of terrorism within the United States." *Id.* §4502(a)(1). From there, while acknowledging that "this policy declaration does not provide direct guidance regarding the meaning of section 4512," Bulloch contends that "the statute is directed toward conduct that removes designated materials from the market and thereby reduces their available supply," and thus does not target "price-gouging" or "profiteering." Bulloch Br. at 24-25.

---

[9] Bulloch relies on two out-of-Circuit district court decisions, both of which used the terms "hoarding" and "accumulate" interchangeably, as evidence that "accumulate" in Section 4512 is not intended to be used in "the 'ordinary sense.'" Bulloch Br. at 19; *id.* at 16-17 (first citing *United States v. Ritchey*, 604 F. Supp. 3d 397 (S.D. Miss. 2022) and then citing *United States v. Leal-Matos*, No. 3:21CR00150 (SCC), 2022 WL 476094, at *1 (D.P.R. Feb. 15, 2022)). But neither of those district courts was presented with a dispute regarding the meaning of the term "accumulate" within Section 4512.

However, as explained, the text of Section 4512 criminalizes two distinct methods of accumulation, one of which is "accumulat[ing] . . . for the purpose of resale at prices in excess of prevailing market prices, materials which have been designated . . . as scarce materials or materials the supply of which would be threatened by such accumulation." 50 U.S.C. §4512. We decline to ignore or erase the plain text of Section 4512 in light of one general policy goal, which itself does not actually conflict with Section 4512. As we have explained, "[a]ppeals to broad remedial goals and congressional purpose are not a substitute for the actual text of the statute when it is clear." *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 412 (2d Cir. 2019); *accord Stanley*, 606 U.S. at 58 ("Nobody disputes the ADA's stated ambition to root out 'discrimination against individuals with disabilities.' §12101(b)(1). But it is quite mistaken to assume . . . that any interpretation of a law that does more to advance a statute's putative goal must be the law." (citation modified)).

Accordingly, we conclude that the statutory context reinforces, rather than undermines, the text's plain meaning.

In sum, the word "accumulate" in Section 4512 is unambiguous and must be interpreted in accordance with its ordinary meaning, which does not require

that accumulation occur over an undefined but prolonged period of time.

Nothing in the statutory context persuades us to depart from the plain meaning

of the term. In light of that conclusion, we need not consult interpretive aids

such as canons of construction or legislative history. *See Rowland*, 826 F.3d at 108.

**B.** **Because the statutory text is unambiguous, the rule of lenity does not apply.**

Bulloch contends that if this Court finds ambiguity in Section 4512, then

the rule of lenity requires reading the statute in a manner consistent with

Bulloch's interpretation. "The touchstone of the rule of lenity is statutory

ambiguity." *United States v. Gonzalez*, 407 F.3d 118, 124 (2d Cir. 2005) (citation

modified). Because we conclude that "the plain language of [Section 4512]

unambiguously indicates that" the term "accumulate" does not require that

Bulloch possessed masks for some unspecified period of time, "there is no need

to turn to a rule of construction to further divine the meaning of the statute, and

the rule of lenity does not apply." *United States v. DiCristina*, 726 F.3d 92, 105 (2d

Cir. 2013).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, we **AFFIRM** the judgment of District Court.

27